IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LEROY FEARS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 10-315 |
| | ) | Judge McVerry |
| | ) | Magistrate Judge Bissoon |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons stated below, it is respectfully recommended that the Defendants' partial motion to dismiss (Doc. 52) be granted in part and denied in part. It is further recommended that Plaintiff's motion for leave to amend his complaint (Doc. 42) be denied as futile. Finally, it is recommended that Plaintiff's motion requesting limitation (Doc. 49) be denied.

### II. REPORT

Plaintiff is a state prisoner incarcerated at the State Correctional Institution at Greene (SCI-Greene), located in Waynesburg, Pennsylvania. Plaintiff filed a "Petition for Review" in the Court of Common Pleas of Allegheny County, Pennsylvania, sometime after November 21, 2008 (the date he signed the pleading) (Doc. 1-2). In this petition, Plaintiff alleged violations of the First, Eighth, and Fourteenth Amendments to the Constitution of the United States. Id. ¶ 44. The sole Defendant named in that filing was the Pennsylvania Department of Corrections ("DOC"). The Court of Common Pleas of Allegheny County

1

transferred the matter to the Court of Common Pleas of Greene County, Pennsylvania, and Plaintiff moved for default judgment. A Notice of Removal was filed in this Court on March 9, 2010 (Doc. 1).

The DOC filed a motion to dismiss (Doc. 5) asserting that it has not been properly served and, additionally, that it is not a proper Defendant to this case, which is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq*. Judge McVerry dismissed Plaintiff's claims against the DOC on May 19, 2010 (Doc. 24), without prejudice to Plaintiff filing an amended complaint. Plaintiff submitted an amendment to the complaint on May 27, 2010 (Doc. 25), in which he named new Defendants and fully incorporated the allegations of the initial petition for review. On September 9, 2010, Defendants filed a partial motion to dismiss (Doc. 52) and a partial answer (Doc. 57). Plaintiff responded to the motion to dismiss on October 13, 2010 (Docs. 62 – 63). This motion is now ripe for disposition.

### A.  Relevant Factual Allegations and Legal Claims

On July 28, 2008, while in the process of placing handcuffs on Plaintiff in order to move him from a cage in the prison yard, Defendant Smith allegedly intentionally cuffed Plaintiff's right wrist too tightly, "injuring [Plaintiff] for [Defendant Smith's] own personal gratification." (Doc. 1-2) ¶ 12. As Plaintiff was led from the yard, he encountered Defendant Grim. Id. ¶ 13. Defendant Grim allegedly examined the fit of the cuff on Plaintiff's left wrist only. Plaintiff informed Defendant Grim that it was the cuff on his right wrist that was too tight, and that he was "in extreme pain and that [he] could feel numbness in [his] right wrist and hand." Id. ¶ 14. Defendant Grim allegedly refused to examine Plaintiff's right wrist. Id.

Plaintiff reiterated his complaints of acute pain to Defendant Grim, and asked to see a nurse. Id. ¶ 15. Defendant Grim allegedly refused to contact a nurse. Plaintiff again requested medical attention, and stated his belief that the allegedly unnecessarily tight handcuff had injured his wrist. Id. Defendant Grim allegedly responded that he would contact the medical department only if he were directed to do so by a lieutenant. Id. Plaintiff responded that this did not conform to DOC policy, and he would ask the sergeant on the next shift to contact medical on his behalf after the shift change. Id. Defendant Grim allegedly asked Plaintiff whether he wanted the RHU lieutenant to contact a nurse, as Defendant Grim would not do it himself.[1] Plaintiff allegedly responded that he wanted the medical department contacted "whether by him or a Lieutenant or the RHU Lieutenant." Id. At that time, Plaintiff was escorted back to his cell. Id.

Approximately fifteen minutes later, Defendant Grim allegedly appeared at Plaintiff's cell door and "started yelling at [him] as to whether [he] wanted a lieutenant to contact medical." Id. ¶ 16. Plaintiff alleges that Defendant Grim's actions and demeanor at this time gave him the impression that he was going to be issued a misconduct report and placed in disciplinary confinement if he continued to request medical attention for his injuries. Id. Plaintiff walked away from his cell door without answering Defendant Grim, who then left the area. Id.

Sometime after Defendant Grim left, Plaintiff again began to experience pain in his right wrist. It was at this time that he noticed that he was bleeding, and became disoriented and "very, very depressed due to the realization of being injured to the point of bleeding . . . ." Id. ¶ 18. When the next shift started, Plaintiff contacted his pod officer. Within a short period of time

---

[1] It is unclear from the wording of the pleadings whether this was a threat to send Plaintiff to the restricted housing unit ("RHU"), or whether Plaintiff was already housed in the RHU, and the lieutenant of that unit was the simply the next individual on the chain of command.

Plaintiff was seen by nursing staff, and received treatment. Id. ¶ 19. Plaintiff was seen by a physician's assistant on July 29, 2008, and again on August, 2008, who gave Plaintiff some unnamed medication and antibiotic ointment. Id. Plaintiff further spoke with mental health staff regarding his depression over the incident. Id. ¶ 20. Plaintiff avers that the wounds on his wrist were healed by August 11, 2008. Id. ¶ 24.

Plaintiff argues that Defendant Grim's failure to contact medical personnel was a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Id. ¶¶ 46, 48, 57, 59. Plaintiff further argues that Defendant Grim's alleged departure from DOC policy with respect to the incident violated Plaintiff's right to the redress of grievances under the First Amendment, as did the delay that he caused in Plaintiff's medical treatment. Id. ¶ 47, 50. Plaintiff also asserts due process violations, claiming that he has protected liberty interests in making a verbal complaint to Defendant Grim, and in receiving immediate medical attention. Id. ¶ 50.

Plaintiff grieved the above incident through the institutional grievance procedure at SCI-Greene. Id. ¶ 27. This grievance was investigated by Defendant Santoyo. Id. Plaintiff was interviewed by Defendant Santoyo, who gave Plaintiff "the extreme impression of partiality . . . ." Id. ¶ 33. Plaintiff wrote a "voluntary written statement" concerning the incident on July 28, 2008, but was not permitted to keep a copy. Id. ¶ 34. Plaintiff also alleges that Defendant Santoyo never interviewed an inmate who allegedly witnessed the events of July 28, 2008, despite being informed explicitly of his existence.

Defendant Santoyo denied Plaintiff's grievance. Id. ¶ 37. The initial disposition was affirmed by Defendant Folino on September 11, 2008. The Chief Grievance Officer[2] upheld this

---

[2] This title refers to Dorina Varner, the subject of Plaintiff's motion to amend (Doc. 42).

4

decision on October 27, 2008.  Id. ¶ 41.  Plaintiff alleges that Defendants Smith and Grim falsified their version of the events of July 28, 2008 – thus violating Plaintiff's rights under the First and Eighth Amendments.  Id. ¶ 51.  Plaintiff also alleges that Defendant Santoyo's handling and denial of Plaintiff's grievance violated his First Amendment rights to seek the redress of grievances and to access the courts.  Id. ¶¶ 52 – 53.  Plaintiff also asserts that Defendant Santoyo's alleged acts or omissions violated his Eight Amendment and Fourteenth Amendment due process rights as well.  Id. ¶ 55.

### B.     Applicable Standard of Review

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Under this standard, a court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  See Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  However, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004).  Nor must a court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged."  Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Additionally, a Court must dismiss a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This is not to say that "heightened fact pleading of specifics . . ." is required. Id. at 570. However, "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The Supreme Court has made it clear that the requirement that pleadings be facially plausible, as expressed in Twombly, applies to all civil suits in the federal courts. See Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In a section 1983 action, a court must liberally construe a *pro se* litigant's pleadings and "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). "'Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.'" Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint – regardless of whether the plaintiff makes such a request – when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

C. **Analysis.**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (*overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)).

1. Eighth Amendment

The Eighth Amendment protects individuals from the infliction of "cruel and unusual punishments." It guarantees humane conditions of confinement and, consequently, requires prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In order to state a claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment, an inmate must show that (1) he suffered a risk of "serious" harm; and (2) prison officials showed "deliberate indifference" to this risk. Farmer, 511 U.S. at 834.

The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. In order to make this determination, "courts must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency." Walker v. Campbell, No. 09-282, 2010 WL 2891488, at *4 (W.D.Pa. May 4, 2010). The prisoner must

show that the risk at issue is one that is intolerable in modern society. Helling v. McKinney, 509 U.S. 25, 35 (1993).

With respect to the second element, an inmate must demonstrate deliberate indifference on the part of prison officials. Farmer, 511 U.S. at 833; Wilson v. Seiter, 501 U.S. 294, 297 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. Farmer, 511 U.S. at 835. The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. This is grounded in the axiom that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)).

      a. Delay of Medical Care

When pleading that the alleged denial or delay of medical treatment triggers a violation of the Eighth Amendment, the objective prong of the above test requires that an inmate show that he was suffering from a "serious" medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1978). A medical need qualifies as "serious" when, for example, "it . . . has been diagnosed by a physician as requiring treatment." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A medical need also may be "serious" if it is so obvious that even a layperson would recognize the need for a doctor's attention. Morrison v. Phillips, No. 06-812, 2008 WL

4308215, at *13 (D.N.J. Sept. 16, 2008) (quoting Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

The United States Court of Appeals for the Third Circuit has held that the subjective element of the Eighth Amendment standard can be met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted). This standard also is met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). However, acts that would rise only to the level of medical malpractice, or mere disagreement over a course of treatment, are not violations of the Eighth Amendment. Spruill, 372 F.3d at 235. Moreover, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 845.

Assuming, *arguendo*, that Plaintiff's allegations have satisfied the first element of the above test, his claims against Defendant Grim still must fail because his factual allegations, even if true, are insufficient to establish deliberate indifference. Specifically, Plaintiff's factual allegations do not support the conclusion that Defendant Grim was actually aware of Plaintiff's need for medical attention.[3] Indeed, Plaintiff admits that he, himself, did not notice that he was bleeding until after Defendant Grim left Plaintiff's cell door – fifteen minutes after Defendant

---

[3] Of course, this calls into question whether Plaintiff's medical need was indeed "serious" within the term's meaning in Eighth Amendment jurisprudence. Morrison v. Phillips, No. 06-812, 2008 WL 4308215, at *13 (D.N.J. Sept. 16, 2008) (quoting Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

9

Smith's alleged use of excessive force was at an end.[4]  Additionally, Plaintiff admits that he turned down, through silence, Defendant Grim's inquiry after the incident as to whether Plaintiff still wanted medical attention.  This simply does not rise to the level of deliberate indifference to a serious medical need.  As such, this claim should be dismissed.  Furthermore, based on Plaintiff's allegations, it is clear that leave to amend would be futile, and dismissal should be with prejudice.

        b.   <u>Failure to Intervene</u>

Plaintiff's factual allegations with respect to Defendant Grim reasonably could be interpreted as an attempt to state a claim against him for failing to intervene in Defendant Smith's alleged wonton infliction of pain on Plaintiff.  The Court of Appeals for the Third Circuit has recognized that the failure of a corrections officer to intervene in certain acts, such as assaults, when there is a reasonable opportunity opportunity to do so, "can be the basis of liability for an Eighth Amendment violation under § 1983 . . . ."  <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002).

In the complaint, Plaintiff alleges that he informed Defendant Grim, multiple times while he was handcuffed, that Defendant Smith had excessively tightened his right handcuff, and that he was in pain because of it.  Plaintiff further alleges that Defendant Grim examined only the cuff on his left wrist, and explicitly refused to examine Plaintiff's right wrist.  There is no indication from Plaintiff's allegations that there would have been any reason why Defendant Grim could not have safely intervened and loosened the cuff, thus saving Plaintiff from

---

[4] Plaintiff's allegations are clear that the only physical injuries stemming from the incident, for which he received actual medical treatment, were the cuts that he allegedly received from the handcuffs.

unnecessary pain. Under the Rule 12(b)(6) standard this is enough to satisfy both the objective and subjective components of the legal standard for a violation of the Eighth Amendment. As such, to the extent that Defendants so move, their motion to dismiss should be denied with respect to this claim.

    c. <u>Remaining Eighth Amendment Claims</u>

Plaintiff makes bald and general assertions that Defendants Grim and Santoyo violated his Eighth Amendment rights based on their involvement in the investigation of his administrative grievance. There is no factual allegation in the complaint or amended complaint that would support the conclusion that the administrative grievance process in any way subjected Plaintiff to any risk of harm whatsoever. Consequently, these claims should be dismissed. As amendment clearly would be futile, dismissal should be with prejudice.

  2. <u>Supervisory Liability</u>

It is well established that no liability exists under section 1983 solely based on a theory of vicarious liability or *respondeat superior*. <u>Shaw v. Stackhouse</u>, 920 F.2d 1135, 1147 (3d Cir. 1990). Instead, in order for section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights. <u>See</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005). In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'" <u>Id.</u> at 353 (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)).

Additionally, a state official in a supervisory role has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the violation of constitutional rights. See Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990). However, in cases where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, section 1983 liability may attach. See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (*overruled in part on other grounds by* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). At a minimum, liability in such a case attaches "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).

The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. See e.g. Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D.Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F.App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause).

Plaintiff's claims against Defendants Folino and Santoyo are based solely on their involvement in the administrative grievance process. As such, they should be dismissed. As it is

clear, based on Plaintiff's allegations, that leave to amend would be futile, dismissal of the claims against these Defendants should be with prejudice.

Additionally, Plaintiff has not stated any factual allegations regarding Defendant Beard's involvement in the incident of July 28, 2008. Instead, it appears that he was named as a Defendant merely based on his supervisory position alone. This is not sufficient to assert liability under section 1983. Accordingly, claims against him should be dismissed. Furthermore, as it is clear that leave to amend would be futile, dismissal of this Defendant will be with prejudice.

### 3. Access to the Courts

Plaintiff concedes that his access to the courts claim is meritless. (Doc. 63) ¶¶ 27 – 28. Accordingly, they should be dismissed with prejudice.

### 4. Plaintiff's First Amendment "Grievance" and Fourteenth Amendment Claims

Plaintiff argues that his right to petition the government for redress of grievances under the First Amendment is something wholly different than his right to access the courts, and extends to the administrative grievance process within the DOC. However, it has been well established that prisoners do not have a constitutional right to prison grievance procedures. See, e.g., Heleva v. Kramer, 214 F.App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases)). Even if such a claim were viable independently of an access to courts claim, it is clear from Plaintiff's factual allegations that he was not precluded from filing institutional grievances, or from pursuing them to completion. Additionally, to the extent that Plaintiff bases his claim for relief on diversions from DOC

policy, such allegations do not raise claims of constitutional significance, and thus are not cognizable under section 1983. "'In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same.'" Brown v. Dep't of Corrs., No. 05-347, 2007 WL 4322980 at *6 (W.D.Pa. Aug. 29, 2007) (Hay, Mag.J) (adopted by Brown v. Beard, No. 2:05cv347, 2007 WL 3274145, at *1 (W.D.Pa. Nov. 5, 2007) (Cercone, J.)) (quoting Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 434 (7th Cir. 1986)). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations").

To the extent that Plaintiff asserts that DOC policy creates a liberty interest in the grievance process this Court notes that any attempt to carve out a state-created federal right from the "mandatory" language of a prison regulation must fail, as that methodology was explicitly rejected by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 483 (1995). The Court has been quite clear that. in the context of State prison regulations, a liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations and quotations omitted). This Court is unaware of any case law holding that the participation in an inmate complaint or grievance system satisfies such a standard. To the contrary, it has been recognized that inmates do not possess a liberty interest in a prison grievance procedure. Anderson v. Pennsylvania, 196 F.App'x 115, 117 (3d Cir. 2006).

Finally, it is noted that Plaintiff does not allege that he suffered any interference in bringing the instant claim before this Court. See Lewis v. Casey, 518 U.S. 343, 351 (1996) (requiring a showing of "actual harm" to demonstrate a denial of access to the courts). Plaintiff has failed to allege facts supporting the conclusion that he has suffered any constitutional injury whatsoever with respect to the prison grievance process, or any attempt to grieve his alleged injury to Defendant Grim on July 28, 2008. This theory is legally frivolous, and all claims based on the grievance process should be dismissed with prejudice.

  5. Substantive Due Process

In his response to Defendants' motion to dismiss, Plaintiff characterizes his claims as arising under substantive due process. (Doc. 63) ¶ 70. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels, 474 U.S. at 331). Official conduct violates substantive due process if it "shocks the conscience . . . ." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations and quotes omitted). This standard "encompasses only the most egregious official conduct." Id. (internal citations and quotes omitted).

Prior to engaging in a substantive due process analysis of Plaintiff's claims, it is first necessary to determine whether they are properly brought as substantive due process claims. The Supreme Court has noted that it has "'always been reluctant to expand the concept of substantive due process[.]'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Consequently, it has established the "more-specific provision rule." Cnty. of Sacramento, 523 U.S. at 843 – 44. Under this rule

"'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 – 60 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)). Here it is clear that the acts of which Plaintiff complains properly arise under the Eighth Amendment. Plaintiff additionally describes his claims as arising under the First Amendment, and the concept of procedural due process as well. As such, under the above rule, any substantive due process claim made by Plaintiff should be dismissed, with prejudice.

6. <u>Motion to Amend</u>

Plaintiff has moved to be allowed to amend his amended complaint to include claims against Dorina Varner (Doc. 42). Attached to this motion are proposed claims that he moves to assert against this putative Defendant, all of which relate to her role in addressing Plaintiff's administrative grievances. (Doc. 42-1). For the reasons stated in Part II.C.2 of this Report, *supra*, this motion should be denied as futile.

7. <u>Motion Requesting a Limitation</u>

Plaintiff has filed a "motion requesting limitation," in which he moves the Court to preclude Defendants from filing a motion to dismiss. (Doc. 49). He bases this on the theory that this would be a second motion to dismiss, and, thus, somehow impermissible. Id. at 1 – 2. First, it is noted that none of the moving Defendants were parties to this suit when the first motion to dismiss was filed and adjudicated. (Doc. 24). Indeed, Plaintiff's original complaint was dismissed because the sole Defendant that he named in it was not a proper Defendant to a section

16

1983 action. Second, the instant motion to dismiss is in response to Plaintiff's amended complaint (Doc. 25), and not the initial complaint. As a consequence, Plaintiff's motion requesting a limitation is frivolous, and should be denied.

### III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the Defendants' partial motion to dismiss (Doc. 52) be granted in part and denied in part. It is further recommended that Plaintiff's motion for leave to amend the complaint (Doc. 42) be denied as futile. Finally, it is recommended that Plaintiff's motion requesting limitation (Doc. 49) be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this report and recommendation must be filed by June 28, 2011. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: June 14, 2011
                s/Cathy Bissoon
                CATHY BISSOON
                UNITED STATES MAGISTRATE JUDGE

**cc:**
**LEROY FEARS**
CQ-7760
S.C.I. at Greene
175 Progress Drive
Waynesburg, PA 15370